CLERK, U.S. DISTRICT COURT
DISTRICT OF NEVADA
LLOYD D. GEORGE U.S. COURTHOUSE
333 LAS VEGAS BLVD. SO. – RM 1334
LAS VEGAS, NV 89101

OFFICIAL BUSINESS

quadient
FIRST-CLASS MAIL
IMI
$002.27
09/28/2026 ZIP 89101
043M31229339
US POSTAGE

FILED
ENTERED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

OCT 05 2026

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: DEPUTY

Michael W. Fattorosi
Fattorosi & Associates, P.C.
6300 Canoga Avenue
Suite 550
Woodland Hills, CA 91367

NIXIE 910 DE 18CU 0010/01/26
RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD
BC: 89101706934 2347N274122-00082

## Judgments, Minute Orders/Orders & Writs

2:22-cv-01395-CDS-DJA Colvin et al v. Fenix International Limited et al

FILED ENTERED RECEIVED SERVED ON
COUNSEL/PARTIES OF RECORD
OCT 05 2026
CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: DEPUTY

**United States District Court**

**District of Nevada**

## Notice of Electronic Filing

The following transaction was entered on 9/28/2026 at 12:28 PM PDT and filed on 9/25/2026

**Case Name:** Colvin et al v. Fenix International Limited et al
**Case Number:** 2:22-cv-01395-CDS-DJA
**Filer:**
**Document Number:** 78

**Docket Text:**
**ORDER GRANTING IN PART FENIX DEFENDANT'S MOTION TO DISMISS.**

**IT IS HEREBY ORDERED that the Fenix Defendants' motion to dismiss [ECF No. [69]] is granted in part and denied in part. Claims three, four, and five may proceed against Fenix International Limited, but are dismissed without prejudice and without leave to amend as to Fenix Internet LLC and Fenix US Inc. Claims six through eleven are dismissed without prejudice and without leave to amend as to Fenix International Limited, Fenix Internet LLC, and Fenix US Inc.**

**Therefore, Fenix Internet LLC and Fenix US Inc. are dismissed, and the Clerk of Court is kindly instructed to terminate them from this case.**

**Signed by Judge Cristina D. Silva on 9/25/2026.; (Copies have been distributed pursuant to the NEF - JG)**

**2:22-cv-01395-CDS-DJA Notice has been electronically mailed to:**

Patricia K Lundvall lundvall@mcdonaldcarano.com, bnelson@mcdonaldcarano.com, edennis@mcdonaldcarano.com, ehelms@mcdonaldcarano.com, sriddle@mcdonaldcarano.com

Jason D. Guinasso jguinasso@ggrmlawfirm.com, bfrancis@ggrmlawfirm.com, evale@ggrmlawfirm.com, gyurek@ggrmlawfirm.com, paralegal@guinassolaw.com

Nicholas Crosby ncrosby@maclaw.com, smong@maclaw.com

Rory T Kay rkay@mcdonaldcarano.com, bgrubb@mcdonaldcarano.com, bnelson@mcdonaldcarano.com, cgerard@mcdonaldcarano.com, ljennings@mcdonaldcarano.com

Benjamin W Bull bbull@ncose.com

Peter Gentala pgentala@ncoselaw.org

Danielle bianculli Pinter dpinter@ncoselaw.org

Christen M Price cprice@ncoselaw.org, jjohnson@ncoselaw.org, vhirsch@ncoselaw.org

Ambika Kumar ambikakumar@dwt.com, lisamerritt@dwt.com, lit-docket@dwt.com

Tabetha Jordan Nakagawa tnakagawa@lextecnica.com, angeli@lextecnica.com, jmadsen@maclaw.com

Caesar D. Kalinowski caesarkalinowski@dwt.com, andreadombovari@dwt.com, lit-docket@dwt.com

**2:22-cv-01395-CDS-DJA Notice has been delivered by other means to:**

Michael W. Fattorosi
Fattorosi & Associates, P.C.
6300 Canoga Avenue
Suite 550
Woodland Hills, CA 91367

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1101333072 [Date=9/28/2026] [FileNumber=12592913-0] [dae2374584fc31c410a967c4a8058ab659f0e6e4fc86eb35bdc4898016cd415513 fe8885b56b6e4b5fe8d1c47cc8ba3ebd78a2534f425af865c8d00cf6c03ea6]]

Case 2:22-cv-01395-CDS-DJA Document 78 Filed 09/25/26 Page 1 of 13

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Lauren Colvin, et al., Plaintiff v. Fenix International Limited, et al., Defendants | Case No. 2:22-cv-01395-CDS-DJA **Order Granting in Part Fenix Defendants' Motion to Dismiss** [ECF No. 69] |

Plaintiffs Lauren Colvin and Pathamawan Hanford bring this action against Fenix International Limited d/b/a/ OnlyFans ("FIL"), Fenix Internet LLC, Fenix US Inc. (collectively, the "Fenix Defendants"), Brittanya Razavi, Marcello Razavi, Meow Gang Production Studios Inc., DG Media & Entertainment Group, Inc., and Doe Defendants 1 through 10. Second am. compl., ECF No. 45. The plaintiffs assert claims for sex trafficking, fraud, conversion, unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing, alter ego, and civil conspiracy. *Id.* The Fenix Defendants move to dismiss the claims against them based on forum non conveniens, lack of personal jurisdiction, and failure to state a claim upon which relief can be granted. Mot., ECF No. 69.[1] For the reasons stated herein, I grant in part their motion.

## I. Background

This case concerns alleged sex trafficking through OnlyFans accounts. As alleged, "OnlyFans is a content subscription website where content creators can earn money from users who subscribe to their content," tip, or use the pay-per-view feature. Second am. compl., ECF No. 45 at 5. The platform allows for pornographic content, and it takes 20% of all monies paid to creators through its site. *Id.* OnlyFans receives over 900 million visits each month, over 50% of

[1] The motion to dismiss is fully briefed. Resp., ECF No. 76; Reply, ECF No. 77.

which come from the United States. *Id.* at 6. In 2022, OnlyFans earned $1.09 billion in total revenue. *Id.*

FIL is an English limited company with its principal place of business in London, England. ECF No. 45 at 2. Fenix Internet LLC, a wholly-owned subsidiary of FIL, is registered in Delaware and physically located in Florida. *Id.* at 2, 4. Fenix US Inc., another wholly-owned subsidiary of FIL, is registered in Delaware. *Id.* at 2.

In 2020, reality television and social media personality Brittanya Razavi, also known as Brittanya O'Camp, allegedly began posting pornographic content of herself onto the OnlyFans website. *Id.* at 8. That same year, she began recruiting other girls—including the plaintiffs—to the site to "manage" their accounts. *Id.* at 9. As part of this business venture, the plaintiffs traveled to Las Vegas, Nevada, at Brittanya's request. *Id.* They also agreed to let Brittanya take 50% of their OnlyFans earnings as commission for her management services. *Id.* at 10. The plaintiffs allege that Brittanya proceeded to maintain "an unnatural level of control over [their] lives to isolate them, make them dependent on her, and ultimately to coerce them into engaging in commercial sex acts against their will and to steal any profit generated from the resultant OnlyFans content." *Id.* at 11. One way in which Brittanya allegedly exercised this level of control was by arranging for the plaintiffs to live in properties she owned and withdrawing rent directly from their OnlyFans account. *Id.* As alleged, Brittanya used the plaintiffs' "personal IDs and social security numbers to set up accounts under each of their names on the OnlyFans Website which she alone had access to and controlled." *Id.* at 12. The plaintiffs could not access their OnlyFans accounts, and Brittanya entered her own banking information to receive all of the earnings from their accounts. *Id.*

The plaintiffs further allege that Brittanya would "persistently coerce" the plaintiffs to "engage in numerous sex acts for the purpose of creating and delivering substantial amounts of Trafficked Content to Brittanya" and her husband, Marcello Razavi (together, the "Razavi Defendants"), for commercial exploitation. *Id.* Specifically, Brittanya would personally record the

trafficked content while Marcello was present and using drugs; Marcello would edit the content through his alter ego DG Media; and Brittanya would then post the trafficked content onto the plaintiffs' OnlyFans and Instagram pages. *Id.* at 12–13. Allegedly, one of the "primary means" of their coercion and manipulation of the plaintiffs was encouraging the plaintiffs to become intoxicated while shooting. *Id.* at 13. This would cause the plaintiffs to become "so inebriated that they were incapable of consenting to the sex acts that followed." *Id.*

Though OnlyFans terms of service forbid third party control over accounts, the plaintiffs allege that the platform was still complicit in their exploitation because it utilized an aggressive referral program that incentivized sex traffickers like Brittanya to "actively recruit and exploit victims on the OnlyFans platform." *Id.* at 17. That referral program paid a 5% commission of the earnings made by the referred user. *Id.* The plaintiffs also allege that OnlyFans was complicit because it allowed Brittanya's bank information—which was already connected with OnlyFans and proven to be profitable for the platform—to be connected with the plaintiffs' OnlyFans accounts. *Id.* They argue that "OnlyFans should have known this was an indication of exploitation, abuse, and sex trafficking but instead OnlyFans chose to profit and benefit from this exploitation by entering into a direct business relationship and partnership with Brittanya to exploit Plaintiffs' with OnlyFans taking 20 percent of the trafficking venture's profits." *Id.*

In turn, the plaintiffs filed suit. The second amended complaint asserts claims against the defendants under both federal and state law. With respect to federal law, the plaintiffs argue that the defendants violated the Trafficking Victims Protection Act ("TVPA") by benefitting and conspiring to benefit from sex trafficking. *See* ECF No. 45 at 22–26. As for the state law claims, the plaintiffs argue that the defendants violated Nevada law by way of fraud/misrepresentation, conversion, unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing, alter ego, and civil conspiracy. *Id.* at 28–34.

## II. Discussion

The Fenix Defendants move to dismiss the plaintiffs' claims against them for lack of personal jurisdiction, forum non conveniens, and failure to state a claim. Upon review of the parties' allegations, I grant that request in part.

### A. The court has personal jurisdiction over FIL.

#### *1. Legal standard*

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "Specific jurisdiction, on the other hand, depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (citation modified). Stated otherwise, "specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.*

The Ninth Circuit employs "a three-prong test for analyzing claims of specific jurisdiction." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). First, the plaintiff must show that the nonresident defendant either (a) purposefully directed its activities or consummated some transaction with the forum or a resident thereof, or (b) performed some act by which it purposefully availed itself of "the privilege of conducting activities in the forum." *Id.* Second, the plaintiff must show that its claims "arise out of or relate to the defendant's forum-related activities." *Id.* Third, "the exercise of jurisdiction must be reasonable." *Id.* If the plaintiff satisfies prongs one and two, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quotation omitted).

"In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If the court resolves the motion without holding an evidentiary hearing, "the plaintiff need only make a prima facie showing of the jurisdictional facts." *Id.* (quoting *Sher*, 911 F.2d at 1361). "Uncontroverted allegations in the plaintiff's complaint must be taken as true." *Id.* (citing *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)). "Conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

### 2. *This court has personal jurisdiction over FIL under the federal longarm statute.*

The Fenix Defendants argue that the court lacks general personal jurisdiction over them because they have never incorporated in Nevada, operated their principal place of business in Nevada, or participated in Nevada's markets in a meaningful way. ECF No. 69 at 10. They further argue that the court lacks specific personal jurisdiction over them because the plaintiffs conflate the corporate Fenix Defendants with the OnlyFans website itself, the Fenix Defendants did not purposefully avail themselves to Nevada, and the plaintiffs' claims do not arise from the Fenix Defendants' forum-related activities. *Id.* at 11–17.

The plaintiffs do not contest that the Fenix Defendants are not subject to general jurisdiction. ECF No. 76 at 5 n.2. Rather, they contend that this court has specific personal jurisdiction over the defendants under the federal longarm statute, Federal Rule Civil Procedure 4(k)(2). *Id.* at 5. That statute provides that serving a summons or filing a waiver of service establishes personal jurisdiction over the defendant if (1) the claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) exercising jurisdiction comports with due process. Fed. R. Civ. P. 4(k)(2); *see also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006). "Federal due process permits a court to exercise

Case 2:22-cv-01395-CDS-DJA Document 78 Filed 09/25/26 Page 6 of 13

personal jurisdiction over a nonresident defendant if that defendant has 'at least minimum contacts with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Global Commodities Trading Group*, 972 F.3d at 1106 (citation modified).

Here, the federal longarm statute is only satisfied with respect to FIL, and it only extends to counts three through five. This is so for three reasons.

First, the only claims arising under federal law that the plaintiffs assert against the Fenix Defendants[2] are set forth in counts three, four, and five.[3] Stated otherwise, the federal longarm statute does not extend to counts six through eleven because those counts all arise under state law.[4]

Second, Fenix Internet LLC and Fenix US Inc. are both incorporated in Delaware. ECF No. 45 at 2, 4. Thus, they do not meet prong two of the federal longarm statute because they are subject to general jurisdiction in Delaware. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 503 (9th Cir. 2023) (explaining that "for a court to exercise general personal jurisdiction over a defendant corporation, the defendant's contacts with the forum state must be so continuous and systematic as to render it essentially at home in the forum State" and that "a corporation is 'at home' in its place of incorporation and principal place of business" (citation modified)). But FIL meets prong two because it is an English limited company with its principal place of business in London, England. ECF No. 45 at 2.

Third, exercising personal jurisdiction over FIL would comport with due process. *See Pebble Beach Co.*, 453 F.3d at 1159. The due process analysis under this prong is "nearly identical to traditional personal jurisdiction analysis," except that it considers the defendant's contacts

---

[2] Claim one is against Brittanya and claim two is against Brittanya, Marcello, DG Media, and Meow Gang. Those claims are not at issue in the instant motion.

[3] Claims three, four, and five allege violations of 18 U.S.C. §§ 1591(A)(2), 1594, and 1595.

[4] Claims six through eleven assert claims for conspiracy, fraud/misrepresentation, conversion, unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing, alter ego, and civil conspiracy.

"with the nation as a whole" rather that just the forum state. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461–62 (9th Cir. 2007). Because this case concerns tortious conduct, a "purposeful direction" analysis applies. *Schwarzenegger*, 374 F.3d at 802. Under that analysis, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017).

Although "maintenance of a passive website alone cannot satisfy the express aiming prong . . . operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 452 (9th Cir. 2024) (quotations omitted), *overruled on other grounds by Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025). "In determining whether a defendant's operation of a particular website has crossed the line between passively benefiting from U.S. users of its website and expressly aiming its website at such users," courts consider "several factors, including the interactivity of the defendant's website; the geographic scope of the defendant's commercial ambitions; and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Id.* "To establish the requisite 'something more' based on these sorts of considerations," the Ninth Circuit has "held that the plaintiff must show that the website operator 'both actively appealed to and profited from an audience' in the U.S. forum." *Id.*

For example, in *Doe*, the Ninth Circuit held that the plaintiff made a prima facia showing that the defendants' "operation of their pornography websites was 'expressly aimed' at the United States." *Id.* at 453. In doing so, it relied on the fact that the defendants contracted with U.S.-based content delivery network (CDN) services for their websites, which they did for the conceded purposes of ensuring that viewers had an "uninterrupted experience." *Id.* It also relied on the fact that the defendants profited from an audience in the United States, as U.S.-based users accounted "for between 12% and 19% of the traffic" on the defendants' websites. *Id.* at 455.

Case 2:22-cv-01395-CDS-DJA Document 78 Filed 09/25/26 Page 8 of 13

Here, like the websites in *Doe*, OnlyFans uses at least one U.S.-based CDN, which operates servers in Las Vegas, Nevada. ECF No. 45 at 3. Further, OnlyFans profits from an audience based in the United States by entering into profit sharing arrangements with U.S.-based creators such as Brittanya. *Id.* at 4, 6. Indeed, the OnlyFans website allegedly receives over 900 million visits each month, and over 50% of those visits come from the United States. *Id.* at 6. Finally, in light of the platform's role in other incidents of sex trafficking,[5] FIL had reason to know that its intentional contacts with the United States would cause harm to people within the United States.

Lastly, exercising personal jurisdiction over FIL comports with due process because the plaintiffs' claims arise out of or relate to FIL's contacts with the forum, and exercising personal jurisdiction is reasonable in this case. *See Doe*, 93 F.4th at 457–58. Claims three through five are brought under 18 U.S.C. §§ 1591(A)(2), 1594, and 1595—i.e., federal sex trafficking statutes. Such claims arise out of or relate to FIL's contacts with the forum because FIL's provision of the OnlyFans website to the United States and FIL's profit from viewers in the United States contributed to the human trafficking alleged in the plaintiffs' complaint. And exercising personal jurisdiction is reasonable considering its participation in the U.S. market and the size of its U.S. user base.

In sum, this court has personal jurisdiction over FIL pursuant to the federal longarm statute.

**B. Forum non conveniens**

***1. Legal standard***

"A federal court has discretion to dismiss a case on the ground of forum non conveniens 'when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's

---

[5] *See* ECF No. 45 at 6, n.6 (first citing https://www.bbc.com/news/uk-57255983; and then citing https://www.bbc.com/news/uk-57429900); *id.* at n.7 (citing https://www.reuters.com/investigates/special-report/onlyfans-sex-legal-cases/).

convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (citation modified). "A defendant invoking forum non conveniens ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Id.* "A district court therefore may dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 432.

### *2. Dismissal based on forum non conveniens is not warranted here.*

The Fenix Defendants argue that the plaintiffs entered into a valid and enforceable contract with OnlyFans in which they agreed to resolve disputes with OnlyFans in England and Wales, and that enforcement of that forum selection clause will not deprive the plaintiffs of their day in court because they may still "pursue their claims in English or Welsh courts." ECF No. 69 at 8. These forums are adequate, the Fenix Defendants argue, because "English law will likely afford [the plaintiffs] a remedy for each of [their] claims if they are successful." *Id.* (quoting *Muniz v. Fenix Int'l Ltd.*, 2021 WL 3417581 (N.D. Ga. June 28, 2021)). The Fenix Defendants also argue that enforcing the clause would not be unfair because the plaintiffs consented to it when they created their accounts or when they ratified that consent by assuming control of their accounts.

The plaintiffs contend that the forum selection clause should not be enforced because such enforcement would be unfair, deprive the plaintiffs of their day in court, and contravene Nevada public policy. ECF No. 76 at 10–13. Specifically, they argue that enforcing the clause would be unfair because they never received notice of it, and the defendants were "not even available to accept service at their London Headquarters because no employees worked there." *Id.* at 11–12. They further argue that they are indigent, making the UK judicial system's fee-shifting and damages caps extra cumbersome. *Id.* at 12. Finally, the plaintiffs assert that the selected forum lacks a civil remedy for sex trafficking, so they would be unable to bring their claims. *Id.*

Case 2:22-cv-01395-CDS-DJA Document 78 Filed 09/25/26 Page 10 of 13

Here, I find that considerations of convenience, fairness, and judicial economy do not warrant a forum non conveniens dismissal. At the motion-to-dismiss stage, the court takes the allegations in the complaint as true and construes all reasonable inferences in the light most favorable to the plaintiffs. And based on the allegations in the complaint and reasonable inferences, I find that there is a genuine dispute as to whether there is an enforceable contract between the plaintiffs and the Fenix Defendants.[6] Thus, it would be unfair to treat the plaintiffs as bound by that contract's terms. Assuming arguendo that an enforceable forum selection exists, I still find that it does not apply here because—in light of the plaintiffs' financial circumstances, the available remedies in the UK judicial system, and the lacking presence of the Fenix Defendants in the UK—it would be unfair to require the plaintiffs to litigate their claims overseas. Thus, I deny the Fenix Defendants' request to dismiss on the ground of forum non conveniens.

**C. Failure to state a claim**

The Fenix Defendants argue that the plaintiffs' claims against them should be dismissed under Rule 12(b)(6) because they fail to allege "a cognizable legal theory" as to each claim. ECF No. 69 at 17 (citing *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011)). Specifically, they argue that the plaintiffs' claims are barred by 47 U.S.C. § 230(c)(1) and lack sufficient factual allegations. I disagree.

***1. Legal standard***

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

---

[6] The court acknowledges that the plaintiffs make contradicting arguments as to whether an enforceable contract between them and OnlyFans exists. *Compare* ECF No. 45 at 31, ¶ 226 ("The Plaintiffs entered a valid and enforceable contract with OnlyFans when OnlyFans used their government IDs and social security numbers to create OnlyFans accounts. This was ratified when OnlyFans restored these accounts to the Plaintiffs control upon their request."), *with* ECF No. 76 at 11 (arguing that the plaintiffs "never received notice of the [forum non conveniens] clause" because Razavi created and controlled their accounts, so "Razavi accepted the clause—not the Plaintiffs").

Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Under Rule 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

### 2. *Discussion*

The Fenix Defendants argue that Section 230 of the Communications Decency Act bars the plaintiff's claims. That statute provides immunity from liability for providers and users of interactive computer services whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker of information provided by another information provider. *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019). But as indicated above, the only

claims that may proceed against FIL are claims three through five—i.e., the federal sex trafficking claims under the TVPRA. Because those claims arise under federal law, immunity under Section 230 does not apply. Stated otherwise, Section 230 does not bar claims three through five because those claims arise under federal law.

Further, I find that the plaintiffs sufficiently state a claim for relief against FIL with respect to claims three through five. Counts three and four allege that the defendants, including FIL, benefitted from sex trafficking in violation of 18 U.S.C. §§ 1591(a)(2), 1594, and 1595. ECF No. 45 at 24–27 Count five alleges that the defendants, including FIL, conspired to violate the TVPRA. *Id.* at 27–28. All three claims may proceed because the plaintiffs allege sufficient facts to support them, as discussed in detail below.

The plaintiffs allege that FIL directly benefitted from the Razavi Defendants' sex trafficking because the sex trafficking was facilitated through OnlyFans, and OnlyFans took around 20% of the monies earned through that sex trafficking. ECF No. 45 at 6, 15–16. Stated otherwise, FIL benefitted from the Razavi Defendants' sex trafficking of the plaintiffs because FIL received the monies from the plaintiffs' accounts, took their 20%, then paid the rest to Brittanya. The plaintiffs further allege that FIL knew about or recklessly disregarded Brittanya's trafficking of the plaintiffs because OnlyFans knew that Brittanya's banking information was associated with different accounts, a third party controlling or receiving money for an account was an indicator of trafficking, and one woman had accused Brittanya of abusing her and taking advantage of her through the woman's OnlyFans account. *Id.* at 17.

Even more, the plaintiffs allege that the benefit to FIL was specific because it was derived through subscription fees and tips paid in exchange for commercial sex acts that Brittanya forced, coerced, or defrauded the plaintiffs into filming—such as by promising to pay them 50% of the profits but not letting them access their accounts to confirm that such payment was made. *Id.* at 11–12. All the while, FIL utilized a referral program that paid current users 5% of the commission earned by any new user the current user brought to OnlyFans, and FIL permitted

bank information to be linked to OnlyFans accounts that did not match the user information associated with the account. *Id.* at 17.

At the motion to dismiss stage, these allegations are sufficient to state a claim for relief. Accordingly, claims three, four, and five against FIL may proceed.

## III. Conclusion

It is hereby ordered that the Fenix Defendants' motion to dismiss **[ECF No. 69] is granted in part and denied in part.** Claims three, four, and five may proceed against Fenix International Limited, but are dismissed without prejudice and without leave to amend as to Fenix Internet LLC and Fenix US Inc. Claims six through eleven are dismissed without prejudice and without leave to amend as to Fenix International Limited, Fenix Internet LLC, and Fenix US Inc.

Therefore, Fenix Internet LLC and Fenix US Inc. are dismissed, and the Clerk of Court is kindly instructed to terminate them from this case.

Dated: September 25, 2026

Cristina D. Silva
United States District Judge